UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

JOHN ADAM KOZAK,
        DEBTOR,

BRIAN C. BEHR,
BANKRUPTCY ADMINISTRATOR
E.D.N.C.
        PLAINTIFF,

v.

JOHN ADAM KOZAK,
        DEFENDANT.

CASE NO. 24-04051-5-PWM

CHAPTER 7

ADVERSARY PROCEEDING NO:
XX-XXXXX-X-XXX

## COMPLAINT

**COMES NOW** the Bankruptcy Administrator for the Eastern District of North Carolina, (the "Plaintiff" or the "Bankruptcy Administrator"), by and through undersigned counsel, and complains of Defendant, John Adam Kozak, by alleging and saying as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the United States District Court for the Eastern District of North Carolina.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) to object to the discharge of the Defendant.

3. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The Plaintiff has standing to pursue this adversary proceeding pursuant to 11 U.S.C. § 727(e) and Section 317 of the Judicial Improvements Act of 1990, which states the Bankruptcy

Administrator has standing to be heard on any issue, in any case or proceeding under this title.

## PARTIES

5. John Adam Kozak (the "Debtor" or the "Defendant") is a resident of Wake County, North Carolina, and is the Debtor in the above referenced bankruptcy case.

6. George F. Sanderson (the "Chapter 7 Trustee") is the Chapter 7 Trustee assigned to this case.

7. Philip Sasser, and Sasser Law Firm, (the "Defendant's Counsel") assisted the Defendant with filing his petition and schedules.

## GENERAL ALLEGATIONS

8. Upon information and belief, the Defendant formed Stellar Beach Realty and Rentals, LLC ("Stellar Beach") in August of 2016. Steller Beach is a North Carolina Limited Liability company with its principal office in Brunswick County, North Carolina.

9. The Defendant was the sole owner of Stellar Beach.

10. Stellar Beach managed vacation home rentals at various North Carolina beaches.

11. Upon information and belief, the Defendant formed Stellar Beach Rentals, LLC ("Stellar Beach Rentals") in 2015. Stellar Beach Rentals is a North Carolina limited liability company with its principal office in Holly Springs, North Carolina.

12. The Defendant was the 95% owner of Stellar Beach Rentals.

13. Upon information and belief, Stellar Beach Rentals is a holding company for single asset real estate entities.

14. The Defendant, both directly and through Stellar Beach Rentals, owned approximately 50 additional limited liability companies.

15. Upon information and belief, the Defendant was in the business of constructing vacation homes and selling those home to investors.

16. Upon information and belief, those investors would use Steller Beach as their vacation rental property management company.

17. Upon information and belief, Steller Beach failed to make payments to multiple homeowners in the Fall of 2024.

### *Schedules and Statements*

18. On November 20, 2024 (the "Petition Date"), the Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code, Case No. 24-04051-5-PWM [DE #1] (the "Petition").

19. On December 17, 2024, the Defendant filed his Schedules and Statements as required by 11 U.S.C. § 521 [DE #23] (the "Schedules and Statements").

20. On Schedule A/B, the defendant disclosed the following in response to question 17:

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☒ Yes

Institution name:

| | | | |
|---|---|---|---|
| 17.1. | Checking 5272 | First Citizens | $13,077.41 |
| 17.2. | Checking | Navy Federal Credit Union | $7,493.00 |
| 17.3. | Checking 7503 | Truist — Negative balance | $0.00 |
| 17.4. | Checking 2573 | Truist | $4.17 |

21. Within Schedule I, the Defendant discloses that he is not employed.

22. Within his Statement of Financial Affairs, the Defendant declared the following on question 4:

**4. Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
■ Yes. Fill in the details.

| | | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|---|
| | | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) |
| From January 1 of current year until the date you filed for bankruptcy: | | ■ Wages, commissions, bonuses, tips<br>☐ Operating a business | $83,333.00 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |
| | | Debtor 1 | | Debtor 2 | |
| | | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) |
| For last calendar year:<br>(January 1 to December 31, 2023) | | ☐ Wages, commissions, bonuses, tips<br>■ Operating a business | $125,000.00 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |
| | | ■ Wages, commissions, bonuses, tips<br>☐ Operating a business | $50,000.00 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |
| For the calendar year before that:<br>(January 1 to December 31, 2022) | | ☐ Wages, commissions, bonuses, tips<br>■ Operating a business | $200,000.00 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |
| | | ☐ Wages, commissions, bonuses, tips<br>■ Operating a business | $250,000.00 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |

23. Within his Statement of Financial Affairs, the Defendant declared the following on question 5:

**5. Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income<br>Describe below. | Gross income from each source<br>(before deductions and exclusions) | Sources of income<br>Describe below. | Gross income<br>(before deductions and exclusions) |
| For the calendar year before that:<br>(January 1 to December 31, 2022) | IRA withdrawal | $200,000.00 | | |

24. In response to question 7 of the Statement of Financial Affairs, the Defendant declared that he made no transfers to insiders within one year of the Petition Date.

25. In response to question 8 of the Statement of Financial Affairs, the Defendant declared that he made no payments or transfers that benefited an insider within one year of the Petition Date.

26. In response to question 13 of the Statement of Financial Affairs, the Defendant declared that he made no gifts within two years of the Petition Date.

27. In response to question 15 of the Statement of Financial Affairs, the Defendant declared no losses due to theft, fire, other disaster, or gambling within one year of the Petition Date.

28. Within his Statement of Financial Affairs, the Defendant declared the following on question 18:

18. Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.
☐ No
■ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| Watch Supply Company | Yacht Master, Yacht Master 2, and Yacht Master Rubber Band. $47,000 | $47,000 | October 14, 2024 |
| Jay Hessenius (broker) | 2018 270 Sea Ray (boat) | $107,000 | March 2023 |

### *341 Meeting*

29. On January 13, 2025, the Chapter 7 Trustee conducted a meeting of creditors pursuant to 11 U.S.C. § 341(a) (the "341 Meeting") in the Defendant's case.

30. The Defendant appeared and provided sworn testimony. Given the amount of Creditor interest, the 341 Meeting was not concluded.

31. On February 3, 2025, the Chapter 7 Trustee conducted the continued 341 Meeting. The 341 Meeting was again not concluded, and the final setting took place on March 5, 2025.

32. The Defendant testified that he reviewed all the documents filed in his case prior to

filing and affirmed that he did not need to make any changes to his Schedules and Statements.

### *Document Production Review*

#### *Deposits*

33.     The BA filed a Motion for 2004 Examination Compelling the Production of Documents [D.E. # 39]. As part of that production, the Defendant provided copies of bank records for his First Citizen Bank Account ending in 5272 and his Navy Federal Account ending in 2044.

34.     Assistant U.S. Attorney Benjamin Higgins, on behalf of the U.S. Small Business Administration, filed a Motion for 2004 Examination Compelling the Production of Documents from Truist Bank (D.E. # 111) ("Truist Production"). Upon receipt of those documents, Mr. Higgins shared, with the Defendant's consent, the document production with interested parties.

35.     Within the First Citizen Bank Account ending in 5272, which is listed on Schedule A/B as owned by the Defendant, the Defendant received a total of $30,000.00 in deposits during 2024.

36.     Within the Navy Federal Bank Account ending in 2044, which is listed on Schedule A/B as owned by the Defendant, the Defendant received a total of $15,000.00 during 2024.

37.     Within the Truist Bank Account ending in 7503, which is listed on Schedule A/B as owned by the Defendant, the Defendant received approximately $452,498.91 in deposits during 2024.

38.     Within the Truist Account ending in 2573, which is a jointly held account between the Defendant and Adele Kozak, the Defendant's non-filing spouse, the Defendant received approximately $127,143.66 in deposits during 2024.

39.     In total, as detailed within paragraph 35 through 38, the Defendant received deposits totaling approximately $652,142.57 during 2024.

40.     The deposits were received from the following sources:

      a.      Steller Beach;

      b.      FLA GALEON LLC, an entity owned by the Defendant;

      c.      119 Ocean LLC, an entity owned by the Defendant;

      d.      611 Marathon Canal LLC, an entity owned by the Defendant;

      e.      wire transfers; and,

      f.      mobile deposits.

41.     As noted above, the Defendant acknowledges receiving $208,333.00 via wages and operating a business during 2024. However, the bank statements indicate the Defendant received a minimum of $625,142.57 during 2024. The Defendant failed to disclose and concealed the receipt of approximately $416,809.57 in income during 2024 alone.

*Transfers*

42.     During 2024, within the Truist Account ending in 7503, the Defendant made withdrawals of approximately $635,042.92 ("Total Withdrawals").

43.     The Total Withdrawals are categorized as follows:

      a.      Wire transfers totaling $125,792.51;

      b.      Zelle payments to an individual by the name of Christopher Burgos totaling $30,450.64;

      c.      Gambling totaling $6,350.00;

      d.      Venmo transactions totaling $15,647.60;

      e.      Zelle payments to Salty Springs totaling $9,200.00;

      f.      Online transfers to an account ending in 9161, which upon information and belief is owned by the related entity FLA GALEON LLC, totaling $53,300.00; and,

      g.      Online transfers to an account ending in 3013, which upon information and

belief is owned by the related entity Steller Beach, totaling $19,369.94.

44. During 2024, within the Truist Account ending in 2573, the Defendant made payments to an AMEX card totaling $194,505.26. Of which $49,812.75 occurred within 90 days of the Petition Date.

45. To date, the Defendant has failed to account for any of the above listed transfers within his Statement of Financial Affairs.

46. The Defendant has failed to disclose the AMEX payments totaling $49,812.75 within the 90 days of the Petition Date as required on the Statement of Financial Affairs question 6.

47. The Defendant has failed to disclose the transfers to insider entities, FLA GALEON LLC and Steller Beach, totaling $72,669.94 as required on the Statement of Financial Affairs question 7, question 8, question 13, and/or question 18.

48. The Defendant has failed to disclose the $30,450.64 sent to Christopher Burgos as required on the Statement of Financial Affairs question 13, and/or question 18.

49. The Defendant has failed to disclose the loss of $6,350.00 to gambling as required on the Statement of Financial Affairs question 15.

50. The Defendant has failed to disclose the wire transfers totaling $125,792.51 on the Statement of Financial Affairs question 18.

51. Further, the location of the money which was transferred via wire transfers remains undetermined.

## FIRST CLAIM - 11 U.S.C. §727(a)(3)

52. The allegations set out in paragraphs 1 through 51 above are realleged and incorporated herein by reference.

53. Section 727(a)(3) provides that the court shall grant a debtor their discharge, unless

they have "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

54. Here, the Defendant has failed to keep or preserve information relating to the wire transfers, and has concealed his receipt and transfer of funds.

55. Furthermore, the Defendant's failure to keep and/or maintain such recorded information is not justified under all of the circumstances of this case. The Defendant was aware of the circumstances he and his companies were facing, yet continued to transfer money in a convoluted manner that concealed the transactions.

56. The Defendant is not entitled to receive a discharge pursuant to 11 U.S.C. §727(a)(3).

## SECOND CLAIM – 11 U.S.C. § 727(a)(4)

57. The allegations set out in paragraphs 1 through 51 above are realleged and incorporated herein by reference.

58. Section 727(a)(4) provides that the court shall grant a debtor their discharge, unless they have "knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account; (B) presented or used a false claim; (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs."

59. The Defendant's Schedules, Statements, and Petition are only loosely based in reality. The Defendant has omitted hundreds of thousands of dollars of transactions from his

Statement of Financial Affairs, including numerous transactions with insiders.

60. Though the Defendant's 341 Meeting was held on three different dates, he did not disclose the transfers and in fact testified that he did not need to make any changes to his Schedules and Statements. To date, the Defendant has not amended the Schedules or Statements to identify any of the information identified herein as missing.

61. Throughout this case, the Defendant has knowingly and fraudulently made false oaths and accounts.

62. The Defendant is not entitled to receive a discharge pursuant to 11 U.S.C. § 727(a)(4).

### **THIRD CLAIM – 11 U.S.C. § 727(a)(5)**

63. The allegations set out in paragraphs 1 through 51 above are realleged and incorporated herein by reference.

64. Section 727(a)(5) provides that the court shall grant a debtor their discharge, unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

65. Though the Defendant received over $625,000.00 in 2024, he was unable to meet his liabilities. The Defendant has failed to explain satisfactorily as to how that can be.

66. However, the Defendant's bank accounts identify that he repeatedly engaged in transactions that removed his assets from his estate. In 2024, the Defendant initiated wire transfers totaling over $125,000.00, made Venmo payments over $15,000.00, transferred funds in excess of $72,000.00 to related entities, and made payments to an AMEX card totaling $194,505.26, of which $49,812.75 occurred within 90 days of the Petition Date.

67. The Defendant has provided zero explanation for these transactions and has thus failed to satisfactorily explain the loss and or deficiency in assets to meet his liabilities.

68. The Defendant is not entitled to receive a discharge pursuant to 11 U.S.C. § 727(a)(5).

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Bankruptcy Administrator respectfully requests that this Court enter an order denying the discharge of the Defendant, and such other relief as the Court deems appropriate.

Respectfully submitted this 11th day of September, 2025.

Brian C. Behr
Bankruptcy Administrator

By: /s/ Kirstin E. Gardner
Kirstin Gardner
Staff Attorney
Bankruptcy Administrator's Office
434 Fayetteville Street, Suite 640
Raleigh, North Carolina 27601
(919) 334-3889
kirstin_gardner@nceba.uscourts.gov
State Bar No. 52144